FRANK BRYANT

*vs.*

JOHN GRADY and the HIGGINS CLASSICAL INSTITUTE BUILDING and LAND.

Penobscot.    Opinion December 26, 1903.

*Payment.*  Appropriation.  *Lien,* not extinguished.  *Bills and Notes.*
Presumption of payment by taking note.

While it is well settled in this State that the acceptance of a negotiable promissory note, in the absence of any testimony or circumstances to the contrary, is presumed to be a payment of the indebtedness for which it was given, it is equally well settled that this presumption may be rebutted and controlled by evidence that such was not the intention of the parties; and, as a general rule, this presumption will be overcome by the fact that the acceptance of a note in payment would deprive the creditor of the substantial benefit of some security.

The plaintiff furnished labor and materials for the construction of the build-
ing upon which he claims a lien, under a contract with the defendant and
with the consent of the owner of the building.  During the progress of the
work, upon January 24, 1902, in response to an application for a payment
upon account, the defendant gave to the plaintiff his negotiable promis-
sory note for $1000, on thirty days time; this note the plaintiff took, had
discounted at a bank, and gave the defendant credit for the amount.  On
March 14, 1902, the architect in charge of the construction gave to the
defendant, who had entered into a contract to construct the building, a
certificate that he was entitled under his contract with the owner to a pay-
ment of $1000.  The defendant indorsed the certificate to the plaintiff and
also gave him an order on the treasurer of the owner for $1000, which sum
was paid by the treasurer direct to the plaintiff and charged by the treas-
urer to the defendant, the contractor.  The plaintiff applied this sum to
the payment of the defendant's note of like amount which had become
due on the twenty-fourth of the preceding month.  Later, another note
was taken and paid under the same circumstances.  In 'taking these
two notes, the plaintiff did not intend to release or reduce his lien claim
on the building, nor did he suppose that he had done so, and the defend-
ant did not claim that any lien had been affected thereby.

*Held;* that these two notes were not taken by the plaintiff in payment pro
tanto of his account; and further, that, even if they had been taken in
payment, the payments made by the treasurer on the architect's certificate
were not payments made by the owner to the plaintiff, but by the defend-
ant to the plaintiff; and that they had a right to make application thereof,
as they did, to the payment of these two notes.

On report.    Judgment for plaintiff.

Action to enforce a lien claim.    The case was reported to the law
court upon the following facts, found by the presiding justice:—

In August, 1901, the defendant John Grady made a contract with
the Higgins Classical Institute to build a school building and a dor-
mitory building.    The plaintiff Bryant contracted with the defendant
Grady to supply him with certain wood-work for those buildings.
Under this contract the plaintiff did furnish labor and material to
the amount of $1692.42 which was used in the construction of the
school building with the consent of the Institute.    They were charged
on his books to Grady.    The plaintiff seasonably filed his lien claim
in proper form and seasonably began this action and attached the
school building for his lien claim.    The regularity of these proceed-
ings is admitted.

In his writ the plaintiff gave a credit of $451.93 and at the hear-

ing gave a further credit of $465.12 received afterward making a total credit of $917.05 which deducted from the $1692.42 leaves a balance of $775.37 for which the plaintiff now claims a lien on the school building, the defendant Grady having been defaulted.

The plaintiff's account in this action began Nov. 1, 1901, but is only a part of his general account for both buildings. On January 24, 1902, he applied to the defendant for a payment on general account and after some correspondence he received the defendant's negotiable promissory note for $1000 on thirty days which he credited on the account on his ledger at that date as follows, "1902 January 24, Cr. by note 30 ds "$1000." This note Bryant discounted at the bank. On March 14, 1902, Mr. Mansur, the architect, certified that Grady, the defendant, was entitled under his contract with the Institute to a payment of $1000. Grady indorsed this certificate to Bryant and also gave him an order on the treasurer of the Institute for $1000 which sum was paid by the treasurer direct to Bryant, and charged by the treasurer to Grady. Bryant applied this $1000 to the payment of Grady's $1000 note of Jany. 24, preceding and did not enter it on his books or account.

Again on April 22, 1902, in response to requests for payment Grady sent to Bryant a negotiable promissory note for $500 which Bryant credited on his books and account on that date as cash and discounted at the bank. May 22, 1902, the architect gave Grady another certificate for a payment of $1000 which Grady turned over to Bryant with an order for payment to him as before. The $1000 was paid on this order by the treasurer direct to Bryant who applied $500 of it to pay Grady's note of April 22 preceding, and credited the remaining $500 to the account. Both of these applications were assented to by Grady. In the same way $2500 more was paid by the Institute direct to Bryant on account of Grady making $4500 in all so paid on general account.

In taking these two notes Mr. Bryant did not intend to release or reduce his lien claim on the building nor did he suppose he had done so. Mr. Grady did not claim that any lien had been affected thereby. None of the officers of the Higgins Classical Institute, however, knew anything about these notes till sometime in September following, nor

did either of them know that the first payment of $1000 and the half of the second payment of $1000 were applied to any notes.

In September Bryant submitted his account with Grady for both buildings to Mr. Mansur, the architect, in order to get a certificate for a further payment, but it appearing to Mr. Mansur that by crediting on the whole account the entire $4500 paid by the Institute direct to Bryant, the account appeared upon its face to be fully paid, he declined to give any further certificate for Bryant's benefit. Whereupon Bryant proceeded to enforce his lien claim on the school building.

To recapitulate: of the $4500 paid by the Institute direct to Bryant on Grady's orders only $3000 was credited by Bryant directly to his account with Grady; the remaining $1500 was applied to the negotiable promissory notes previously given by Grady to Bryant. This disposition of those payments, if allowable against the Institute, left a balance due Bryant of $775.37 for which he had a lien on the school building. If, however, the application of the $1500 to the notes of Grady was not allowable against the Institute, and the Institute is entitled to have the $1500 credited on the account as reduced by the notes, then, as to the Institute, Bryant's account is paid. If only the $500 is to be thus credited then there is a balance due as against the Institute of the $775.37 less the $500 or $275.37.

The original certificate of the architect on which the various payments were made by the Institute direct to Bryant were to be presented for inspection by the law court, if desired by either party.

*J. W. Manson,* for plaintiff.

*A. L. Blanchard,* for Higgins Classical Institute.

It is contended by the Higgins Classical Institute that the notes given by Davis & Grady to Bryant & Co. were accepted as payment pro tanto; that the application of the $1500 to the notes of Davis & Grady was not allowable against the Institute; that the Institute is entitled to have the $1500 credited on the account as reduced by the notes, and that, so far as the Institute is concerned, Bryant & Co. are paid.

This contention is urged for the following reasons:

(1.) Because the money was sent by the Institute direct to Bryant & Co. for the express purpose of protecting itself against any lien

that Bryant & Co. might have for material furnished, which fact was well known, or ought to have been known, by Bryant & Co.

(2.) That the money so sent was the money of the Institute, and that as such the Institute alone could have the disposal of it for its exclusive benefit, and that no arrangement or understanding between Bryant & Co. and Davis & Grady could in any way affect the rights of the Institute in the disposition of its funds as it saw fit.

A note accepted for a pre-existing debt is prima facie payment of that debt. *Varner* v. *Nobleborough*, 2 Maine, 121; *Wade* v. *Curtis*, 96 Maine, 309, 311; *Mehan* v. *Thompson*, 71 Maine, 492; *Brewer Lumber Co.* v. *B. & A. R. R. Co.*, 179 Mass. 228; *Wetherell* v. *Joy*, 40 Maine, 325; *Descadillas* v. *Harris*, 8 Maine, 298; *Newall* v. *Hussey*, 18 Maine, 249; *Fowler* v. *Ludwig*, 34 Maine, 455; *Shumway* v. *Reed*, 34 Maine, 560; *Bunker* v. *Barron*, 79 Maine, 62.

The debtor has the undisputed right to dispose of his money as he desires, and when a debtor makes a payment and his intention of its application is brought home to the creditor, the creditor must make the intended application, and if he does not the law will. Am. & Eng. Cycl. Law, (Payment) 2nd ed. p. 447, note 3; *Boutwell* v. *Mason*, 12 Vt. 608; *Parker* v. *Green*, 8 Met. 144; *Joy* v. *Foss*, 8 Maine, 455; *Starrett* v. *Barber*, 20 Maine, 457; *Bangor Boom Corp.* v. *Whiting*, 29 Maine, 123; *Treadwell* v. *Moore*, 34 Maine, 112.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

WISWELL, C. J. This action to enforce a lien upon a building was reported for the determination of this court upon the facts found by the justice presiding at nisi prius. From that report the following facts, material to the issues involved, appear:—

The Higgins Classical Institute, the owner of the school building attached, and upon which the plaintiff seeks to enforce his lien, made a contract with the defendant for the construction of this building and also another building, to be used as a dormitory. Subsequently the plaintiff made a contract with the defendant to furnish him cer-

tain labor and material to be used in the construction of these build-
ings, and in pursuance thereof, and with the consent of the owner,
did furnish labor and material to the amount of $1692.42 which
were used in the construction of the building attached.    This amount
is to be reduced by credits of $917.05.    The plaintiff seasonably filed
his lien claim in proper form and seasonably began this action and
caused an attachment to be made of the building upon which the
lien was claimed; no question is made as to the regularity of these
proceedings.

But the owner of the building claims that further credits should
be given upon the plaintiff's account, at least so far as his lien claim
is concerned, and this question, which arises under the following
facts, is the only one involved.    The plaintiff's general account for
labor and materials furnished for both buildings commenced Nov. 1,
1901; on January 24, 1902, in response to an application for a pay-
ment upon account the defendant gave him his negotiable promissory
note for $1000 on thirty days time, which the plaintiff took, had
discounted at a bank and gave the defendant credit on his ledger for
that amount.    The entry on the plaintiff's ledger being "1902, Jan.
24, Cr. by note, 30 ds. $1000."    On March 14, 1902, the architect
in charge of the construction gave to the defendant a certificate that
he was entitled under his contract with the owner to a payment of
$1000.    The defendant indorsed the certificate to the plaintiff and
also gave him an order on the treasurer of the owner for $1000,
which sum was paid by the treasurer direct to the plaintiff and
charged by the treasurer to the defendant, the contractor.    The plain-
tiff applied this sum to the payment of the defendant's note of like
amount which had become due on the 24th of the preceding month.

Again, on April 22, 1902, in response to a request for a payment,
the defendant sent to the plaintiff his negotiable promissory note for
$500, for which amount the plaintiff gave the defendant credit on
his books as cash, and had the note discounted at the bank.    It does
not appear from the report when this latter note matured.    But on
May 22, 1902, the architect gave the defendant another certificate
that he was entitled to a payment of $1000 under his contract from
the owner, which the defendant indorsed over to the plaintiff and

gave him at the same time an order for the payment of this sum, as before. The treasurer of the owner paid this sum of $1000 upon the architect's certificate and the defendant's order direct to the plaintiff, who applied $500 of it to the payment of the defendant's note of April 22, preceding, and credited the remaining $500 on his account.

The owner of the building claims that the plaintiff by taking these notes received pro tanto payments upon his account which he now seeks to enforce against the building, and further, that when these two payments of $1000 each were made as above stated by the owner to the plaintiff upon the order of the defendant, the plaintiff should have applied them to his general account and had no right to apply the whole of the first payment and half of the second to the payment of the notes above referred to.

We are unable to agree with the owner in either of these contentions. While it is well settled in this State that the acceptance of a negotiable promissory note, in the absence of any testimony or circumstances to the contrary, is presumed to be a payment of the indebtedness for which it was given, it is equally well settled that this presumption may be rebutted and controlled by evidence that such was not the intention of the parties; and, as a general rule, this presumption will be overcome by the fact that the acceptance of a note in payment would deprive the creditor taking the note of the substantial benefit of some security. *Bunker* v. *Barron,* 79 Maine, 62, 1 Am. St. Rep. 282. In this case the court below found that the plaintiff, in taking these two notes, did not intend to release or reduce his lien claim on the building, nor did he suppose that he had done so, and that the defendant did not claim that any lien had been affected thereby. The fact that the plaintiff gave credit to the defendant upon his book for the amounts of these two notes is only a circumstance bearing upon the question of whether or not the notes were in fact taken as payment. In view of the finding of facts upon this question by the court below and the strong improbability that the plaintiff intended to accept these notes in payment, pro tanto, of his account, thereby releasing the valuable security of his lien upon the buildings, we are satisfied that they cannot be regarded as such payments in this case.

The notes not having been taken in payment when given, their

subsequent negotiation would not have been affected by the plaintiff's right, if they had not been paid, to take them up at maturity, cancel or redeliver them to the defendant and enforce his lien claim precisely as if they had not been given. *Davis* v. *Parsons*, 157 Mass. 584; *McLean* v. *Wiley*, 176 Mass. 233.

But, even if these notes had been taken by the plaintiff as payment on account of his lien claim, it would not affect the result. The payments which were applied, in the case of the first one in full, and as to the second one to the extent of one-half, were not made by the owner to the plaintiff, they were payments made by the defendant to the plaintiff. When the architect gave certificates that the defendant was entitled under his contract to these two payments of $1000 each, and those certificates were indorsed by the defendant to the plaintiff, with orders from the defendant to pay the amount to the plaintiff, and these amounts were paid upon the certificate and in pursuance of the orders, the effect was for the owner to pay the defendant these amounts and for the defendant to pay the plaintiff the same. Whether or not the owner under its contract with the defendant had the right to use the money due the contractor for the purpose of satisfying the lien claims of those who furnished either labor or material, we do not know, because the contract is not made a part of the case, but whether they had the right or not they did not exercise it in this case. These payments upon the order of the defendant were equivalent to payments made directly to him, and this was undoubtedly recognized by the treasurer because he charged these amounts to the defendant. The payments of these two sums, therefore, were in substance and effect made by the defendant to the plaintiff, and the application of the first sum and one-half of the second sum to the payments of these two notes, was, as found by the court below assented to by the defendant. No one can have a better right to determine as to the application of payments than the persons making and receiving the same, when they have agreed as to such application nothing further remains to be done. So that if these two notes had been taken in payment, pro tanto, of the plaintiff's lien claim, still the plaintiff had a perfect right to apply this money to the payment of these notes, because the person making the payment assented thereto.

It follows, the defendant having already been defaulted, that the plaintiff is entitled to a lien judgment against the building and land attached for the sum of $775.37, and interest from the date of the writ.

<em>Judgment for plaintiff as above.</em>